UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES CHOWNING, ET AL.,<br><br>  Plaintiffs,<br><br>  v.<br><br>TYLER TECHNOLOGIES, INC.,<br><br>  Defendant. | Case No.: 4:25-CV-04009-YGR<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT TYLER TECHNOLOGIES, INC.'S MOTION TO DISMISS<br><br>Re: Dkt. No. 19 |

Pending before the Court is defendant Tyler Technologies, Inc.'s ("Tyler") motion to dismiss plaintiffs James Chowning and Adam Fitzgerald's first amended class action complaint ("FACAC"). (Dkt. No. 19, Defendant's Motion to Dismiss First Amended Class Action Complaint ["Mot."].) Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Tyler's motion to dismiss.[1]

## I.  BACKGROUND

### A.  FACTUAL ALLEGATIONS

The FACAC provides as follows:

In December 2023, the California Department of Parks and Recreation ("DPR") awarded Tyler a 10-year contract to design and operate ReserveCalifornia.com ("Reserve California"), a website that enables online booking for campsites located in California State Parks. (FACAC ¶ 2.) Reserve California charges campers a campsite fee and a $8.25 reservation fee. (*Id.*) In exchange for Tyler's services, DPR "agreed to compensate [Tyler with] the eligible reservation-based transaction fees." (*Id.* ¶ 67.) The contract requires DPR to approve any service and reservation fee that Tyler charges (*id.,* Ex. A at 25) and requires Tyler to comply with federal and California laws and regulations in designing, operating, and otherwise performing any services related to Reserve California. (*Id.* ¶ 66.) Tyler began operating Reserve California in August 2024. (*Id.* ¶ 2.)

---

[1] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds this motion appropriate for decision without oral argument.

Plaintiffs complain that the $8.25 reservation fee that Tyler charges is not included in "the initial price displayed to consumers" and is not disclosed "until the final check-out screens." (*Id.* ¶ 5.) In October 2024, plaintiff James Chowning made a same-day reservation through Reserve California for a campsite at San Onofre State Beach. (*Id.* ¶ 87.) After identifying the park and selecting the correct date and location, Chowning reviewed a list of available sites, which initially displayed the reservation price as "starting at $45.00." (*Id.* ¶¶ 92–93.)



Once Chowning selected a campsite at Bluff Camp, the website again displayed that the campsite's price was $45. (*Id.* ¶ 94.)



2

Chowning next clicked "Book Now" and was taken to the website's checkout page, (*id.* ¶¶ 95–96), where the $8.25 reservation fee was first mentioned.[2] (*Id.* ¶ 96.)

On the next checkout page, Chowning alleges the true price of the campsite—$53.25—was finally displayed (*id.* ¶ 98):



---

[2] Plaintiffs allege, through illustrative screenshots from Reserve California, that the $8.25 reservation fee was not disclosed until plaintiffs reached the first of the several checkout pages. (*Id.* ¶¶ 96, 115.) Defendant disputes that fact and argues that its website—which it requests the Court judicially notice—discloses the reservation fee under the "Show More" link related to unit details, amenities, and other remarks regarding the selected campsite. (Mot. at 6.) A website is not judicially noticeable, nor does the Court resolve factual disputes on a motion to dismiss. The Court therefore **DENIES** Tyler's request for judicial notice.

Plaintiff Adam Fitzgerald's experience reserving a campsite through Reserve California at the Crystal Cove State Park Moro Campground was substantially similar to plaintiff Chowning's. (*Id.* ¶¶ 102–18.)

On behalf of a putative class, plaintiffs now bring this action against Tyler, alleging that Tyler violated the: (1) Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1770 *et seq.*; (2) Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (3) False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*; and (4) unjust enrichment.

### B. THE HONEST PRICING ACT

By way of background, plaintiffs' theory of the case flows from the Honest Pricing Act, which the California Legislature enacted in October 2023. (*Id.* ¶ 8.) The Act prevents certain deceptive advertising tactics, like "drip pricing," where a firm advertises the product's base price and later reveals other mandatory fees. (*Id.* ¶ 52.) Those fees are also sometimes referred to as "junk" fees. (*Id.* ¶¶ 6–7.) The Honest Pricing Act added the following provision to the CLRA:

> (a) The unfair methods of competition and unfair or deceptive acts or practices listed in this subdivision undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer are unlawful:
>
> . . .
>
> (29) (A) advertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges other than either of the following:
>
>> (i) Taxes or fees imposed by a government on the transaction.
>>
>> (ii) Postage or carriage charges that will be reasonably and actually incurred to ship the physical good to the consumer. . . .

Cal. Civ. Code § 1770(a)(29)(A).

### II. LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for failing to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when a plaintiff pleads "factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In reviewing the plausibility of a complaint, courts "construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Courts must consider the complaint "in its entirety" and may also consider "documents incorporated into the complaint by reference[] and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Finally, "[d]ismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

Because plaintiffs' CLRA, UCL, and FAL claims are based on misleading advertising, they "sound in fraud" and must meet Rule 9(b)'s heightened pleading standard. *See Watkins v. MGA Ent. Inc.*, 550 F.Supp.3d 815, 833 (N.D. Cal. 2021); Fed. R. Civ. P. 9(b); (FACAC ¶¶ 135–38). Under Rule 9(b), a plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*

### III.   ANALYSIS

Tyler moves to dismiss plaintiffs' amended complaint in its entirety, arguing that: (1) plaintiffs lack standing to advance their CLRA, UCL, and FAL claims; (2) plaintiffs fail to allege the elements of a CLRA claim; (3) its conduct is protected by a safe harbor which excludes taxes or fees imposed by a government on the transaction; and (4) plaintiffs fail to state a claim for unjust enrichment. The Court addresses each argument in turn.

#### A.   STANDING

Tyler argues that plaintiffs lack standing because plaintiffs cannot show causation or harm.

##### 1.   Causation

Tyler argues that plaintiffs do not properly allege causation because plaintiffs do not plead that they relied on Tyler's supposed misrepresentation or omission. Rather, plaintiffs allege that they reviewed the mandatory reservation fee, which was revealed during the checkout process, and continued to reserve the campsite.

5

Under the CLRA, a consumer who "suffers any damage as a result of [any practice declared unlawful under this section]" can bring a claim. Cal. Civ. Code § 1780(a). The UCL and FAL too have similar causation requirements. Cal. Bus. & Prof. Code §§ 17204, 17505.2(e). To establish causation under the CLRA, UCL, and FAL, plaintiffs must allege that they relied on defendant's alleged misrepresentation. *Harvey v. World Market, LLC*, 2025 WL 1359066, at *3 (N.D. Cal. May 9, 2025) (citing *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (CLRA and UCL)); *see also Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1020 (9th Cir. 2020) (UCL and FAL)). At the pleading stage, courts may infer reliance, however, if the misrepresentation is "material." *Daniel*, 806 F.3d at 1225; *Moore*, 966 F.3d at 1021. A representation is "material" if "a reasonable consumer would attach importance to it." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013).[3] "Moreover, the legislature's decision to prohibit a particular misleading advertising practice is evidence that the legislature has deemed that the practice constitutes a 'material' misrepresentation, and courts must defer to that determination." *Id.*; *see also Mansfield v. StockX LLC*, 2025 WL 2811791, at *7 (N.D. Cal. Oct. 3, 2025).

Here, plaintiffs allege that by "[r]elying on quoted price, [plaintiffs] continued with the transaction" and that "had [plaintiffs] known the true nature of the Junk Fee . . . [they] would have attempted to pay in person directly to [the California state park]." (*Id.* ¶¶ 89, 95.) These allegations are sufficient to allege materiality, and thus, under *Hinojos, supra,* the allegations suffice for the elements of reliance and causation.

In a variation of the above, a court in this district recently addressed the same issue in *Harvey*, 2025 WL 1359066, at *4. There, the plaintiff alleged that the defendant, World Market, violated the CLRA in not disclosing oversized item surcharges and shipping and handling fees for furniture. *Id.* World Market raised the same reliance argument that Tyler raises here, claiming that the plaintiff could not allege reliance because she proceeded with her furniture purchase after World Market disclosed the mandatory fees. *Id.* The court concluded that "[a]t this early stage of

---

[3] Tyler's attempts to distinguish *Hinojos* by arguing that it presents a materially different set of facts from the present case do not persuade. (Dkt. No. 30, Defendant's Reply ["Reply"] at 13.) In short, *Hinojos*' legal principles apply in this action. The difference in the factual background is irrelevant and does not compel a different result.

6

litigation, it would be inappropriate for the Court to hypothesize about the availability of alternatives or other factual circumstances surrounding the transaction." *Id.* The *Harvey* court also emphasized the "catch-22" that World Market there, and Tyler here, advances: any consumer seeking to enforce the new CLRA provision could either purchase the product (despite the fee disclosure, which, according to defendant would strip a plaintiff of standing due to a lack of causation) or decline the purchase (meaning the plaintiff was not damaged, and therefore did not have standing). *Id.* Neither choice provides a plaintiff standing to sue. "Surely the Legislature did not pass a law with no practical effect—especially given the overarching purpose of the CLRA." *Id.* The Court agrees with the logic.

### 2. Damages

Tyler next argues that plaintiffs were not harmed because they knowingly paid the reservation fee when reserving the campsite and received the benefit of the bargain—a campsite in accordance with the final fee.

The CLRA, UCL, and FAL each require that plaintiffs allege that they were harmed because of the defendant's conduct. *Hinojos*, 718 F.3d at 1104, 1107. A plaintiff is injured when they pay for an unlawful fee in the context of drip pricing. *See Harvey*, 2025 WL 1359066, at *6; *Mansfield*, 2025 WL 2811791, at *4 ("But whether [plaintiff] knew about the fee prior to purchase has no bearing on whether paying the fee constituted an injury. Under [plaintiff's] allegations, [defendant] was not entitled to collect the fee in the first place without disclosing it up front. As such, [defendant] inflicted an injury when it charged, and [plaintiff] paid, the allegedly unlawful fee.").

Plaintiffs allege that had they known the fee "was paid to Tyler Technologies, and not Cal Parks, [they] would not have made the reservation through Reserve California and instead would have attempted to pay directly in person to Cal Parks." (FACAC ¶¶ 89, 105.) Those allegations are sufficient at this juncture. While the Court agrees that Tyler is not required to disclose to whom the reservation fee is paid, Tyler's argument does not address its alleged failure to disclose the complete price, including the reservation fee, in the first instance. For the same reason, plaintiffs have satisfied the damages requirement under the UCL and the FAL.

Accordingly, the Court finds that plaintiffs have established standing to bring their claims under the CLRA, the UCL, and the FAL.

### B. THE CLRA CLAIM

Tyler next argues that plaintiffs fail to state a CLRA claim for two reasons: (1) campsite reservations are neither "goods" nor "services" for purposes of the statute; and (2) the reservation fee is exempt from Section 1770(a)(29) because it is a tax or fee that the government imposes.

#### 1. "Goods" and "Services" Requirement of the CLRA

The CLRA applies to only transactions involving "the sale or lease of goods or services." Cal. Civ. Code § 1770(a). The CLRA defines "goods" and "services" as follows:

> (a) "Goods" means tangible chattels bought or leased for use primarily for personal, family, or household purposes, including certificates or coupons exchangeable for these goods, and including goods that, at the time of the sale or subsequently, are to be so affixed to real property as to become a part of real property, whether or not they are severable from the real property.
>
> (b) "Services" means work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods.

Cal. Civ. Code § 1761(a), (b). In evaluating whether the challenged conduct is a good or service, a court must follow the statutory requirement that the CLRA shall be "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." *Id.* § 1760.

The Court finds that a campsite reservation is not a "tangible chattel" and thus cannot be considered a "good" under the statute. Several courts, however, have found that these sorts of reservations can be considered a "service" for purposes of the CLRA. For example, the *Harvey* court found that the Honest Pricing Act was "designed to prohibit drip pricing in all industries," which, as the California Legislature explained, includes "short-term rentals, [and] hotels." *Harvey*, 2025 WL 1359066, at *4 n.2 (citing SB 478 FAQ at 1); *see also Hall v. Marriott Int'l, Inc.*, 2020 WL 4727069, at *13 (S.D. Cal. Aug. 14, 2020) (holding that a hotel reservation could be considered a service under the CLRA).

8

Defendant analogizes to a host of cases that do not persuade. Those cases involve items that are markedly different from campsite reservations. *See Hall v. Sea World Entertainment Inc.*, 2015 WL 9659911 (S.D. Cal. Dec. 23, 2015) (holding that tickets for entrance to an amusement park were not goods or services where the lawsuit was filed to challenge defendant's alleged misrepresentation about the treatment of whales); *Olson v. Major League Baseball*, 447 F.Supp.3d 159 (S.D.N.Y. 2020), *aff'd*, 29 F.4th 59 (2d Cir. 2022) (did not address this issue); *Woulfe v. Universal City Studios LLC*, 2022 WL 18216089 (C.D. Cal. Dec. 20, 2022) (limited-time license to stream a film); *Lazebnik v. Apple, Inc.*, 2014 WL 4275008 (N.D. Cal. Aug. 29, 2014) (season pass for a TV show on iTunes). Two cases relate to "timeshare points." *See Wixon v. Wyndham Resort Development Corp.*, 2008 WL 1777590 (N.D. Cal. Apr. 18, 2008); *Kissling v. Wyndham Vacation Resorts, Inc.*, 2015 WL 7283038 (N.D. Cal. Nov. 18, 2015). In those two cases, however, the plaintiffs were guaranteed "corporate ownership" of a timeshare, which the court determined was for commercial, not personal, use. *Wixon*, 2008 WL 1777590, at *4; *Kissling*, 2015 WL 7283038, at *4; *see also* Cal. Civ. Code § 1761(b) (excluding services for a "commercial or business use.") That is not the case here.

The Court finds that the reservation fee for a campsite is a "service" for a visitor's personal use, akin to a hotel reservation, and thus finds that it is subject to the CLRA.

### 2. Section 1770(a)(29)(A) of the CLRA

Tyler next argues that its $8.25 mandatory reservation fee is exempted from the CLRA because it qualifies as a "[t]ax[] or fee[] imposed by a government on the transaction" under Section 1770(a)(29)(A)(i). Plaintiffs disagree.

As explained above, the Honest Pricing Act applies to all "advertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges." Cal. Civ. Code § 1770(a)(29)(A). The statute carves out two exceptions for: (i) "[t]axes or fees imposed by a government on the transaction," and (ii) postage or carriage charges. Section 1770(a)(29)(A)(i)-(ii). Tyler argues that its reservation fee satisfies the first exception.

Cases interpreting Section 1770(a)(29)(A)(i) have limited its reach to government-imposed taxes. *See Harvey*, 2025 WL 1359066, at *1 (explaining that the newest CLRA provision prohibits

9

"'[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges' other than taxes or actually incurred shipping costs") (citation omitted); *Mansfield*, 2025 WL 2811791, at *4 (noting that the CLRA, with the new amendment, now directly prohibits drip pricing unless the later added mandatory fees are "taxes [or] shipping costs"). Thus, any exception to the CLRA should be construed narrowly. *See Harvey*, 2025 WL 1359066, at *1; *Mansfield*, 2025 WL 2811791, at *4.

Tyler argues that because DPR permits contractors to charge fees in exchange for services performed, and because those fees must be approved by DPR's Project Management Office (PMO), the reservation fee is a "government-imposed fee." (FACAC, Ex. A at 25.) ("The [website interface] shall be capable of charging transaction fees in addition to the base cost of any purchase through [it]. This may include transfer fees, cancellation fees, and reservation fees. Such fees shall be set and implemented solely at the DPR PMO's discretion."). As exemplar fees under this subsection, Tyler points to "airport use fees, hotel taxes, tourism board fees, wheelchair accessible vehicle fees imposed on Lyft and Uber by the Public Utilities Commission." (Mot. at 14.) Said differently, Tyler points to fees collected by a private company but that are passed to and retained by the government.

Here, by contrast, the complaint alleges that Tyler collects *and* retains those fees. (FACAC ¶¶ 16, 104.) Contrary to Tyler's claim, plaintiffs' pleadings do not suggest that the reservation fees were used to "help DPR pay for the cost of the public reservation system." (Mot. at 14.) Whether DPR set and ordered the reservation fee is a factual dispute that the Court will not resolve on a motion to dismiss.[4] Thus, the Court finds that plaintiffs have adequately pleaded their CLRA claim.

Tyler's motion to dismiss the CLRA claim is **DENIED**.

---

[4] Although Tyler advertises a "starting at" price rather than a "fixed" price, that difference does not affect the Court's analysis because a consumer could not reserve a campsite online for the "starting at" price. (*See* Mot. at 13.) Under the Honest Pricing Act, a business must "include all mandatory fees" in the price it advertises for a good or service. Cal. Civ. Code § 1770(a)(29)(A).

10

### C.  THE UCL CLAIM AND FAL CLAIM

Tyler claims that because the reservation fee is authorized by statute, the CLRA has created a safe harbor that protects Tyler from plaintiffs' UCL and FAL claims.

Where specific legislation provides a "safe harbor" by permitting certain conduct as exempted from being unlawful, plaintiffs may not use the general unfair competition law to assault that harbor. *Cel-Tech Commc'ns., Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 182 (1999).

As noted above, a factual issue exists as to whether the reservation fee was imposed by DPR. Accordingly, the application of a safe harbor fails at this juncture. The Court **DENIES** Tyler's motion to dismiss the UCL and FAL claims on that basis.

### D.  THE UNJUST ENRICHMENT CLAIM

Finally, Tyler argues that plaintiffs fail to state a claim for unjust enrichment because there is nothing unjust about paying a statutorily authorized cost-recovery fee for the convenience of reserving a campsite in a state park.

While "there is not a standalone cause of action for unjust enrichment, . . . a court may 'construe the cause of action as a quasi-contract claim seeking restitution,'" which describes "the theory underlying a claim that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (internal citations and quotations omitted). "The fact that one person benefits another is not, by itself, sufficient to require restitution. The person receiving the benefit is required to make restitution only if the circumstances are such that, as between the two individuals, it is *unjust* for the person to retain it." *First Nationwide Savings v. Perry*, 11 Cal.App.4th 1657, 1663 (1992) (emphasis in original); *see also Astiana*, 783 F.3d at 762; *Doe v. Epic Games*, 435 F.Supp.3d 1024, 1052 (2020).

Here, as explained above, plaintiffs claim that had they known the true nature of the reservation fee, they would have attempted to pay in person directly. (FACAC ¶¶ 89, 105.) Plaintiffs' theory does not indicate that the fee was coerced, too high, or otherwise unjust to warrant restitution. (*Id.* ¶¶ 5, 134.) As pleaded, plaintiffs do not allege that Tyler received a benefit through

"mistake, fraud, coercion, or request" to sustain a claim for unjust enrichment. *See Astiana*, 783 F.3d at 762.

Accordingly, Tyler's motion to dismiss plaintiffs' claim for unjust enrichment is **GRANTED** without leave to amend. The Court concludes that any amendment would be futile because plaintiffs take issue only with Tyler's advertising and do not claim that the fee itself is unjust.

## IV. CONCLUSION

For the foregoing reasons, the Court the Court **GRANTS IN PART** and **DENIES IN PART** Tyler's motion to dismiss. Tyler shall file an answer to the complaint within twenty-one days of this order. The Court sets a case management conference for February 2, 2026 at 2:00 p.m. on the Zoom platform.

This terminates Dkt. No. 19.

**IT IS SO ORDERED**.

Date: **December 5, 2025**

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**